# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| KEVIN LAWRENCE,<br>    Petitioner, | Case No. 1:11-cv-765 |
| vs. | Dlott, J.<br>Wehrman, M.J. |
| WARDEN, LEBANON<br>CORRECTIONAL INSTITUTION,<br>    Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is before the Court on the petition and respondent's return of writ with exhibits, as well as the transcribed record of the challenged state criminal trial proceedings. (Docs. 1, 6, 7).

## I. PROCEDURAL HISTORY

### State Trial Proceedings: Conviction And Sentence

In August 2007, the Hamilton County, Ohio, grand jury returned an indictment against petitioner stemming from a shooting incident, which resulted in the death of one victim (Jarel Grafinreed) and physical injury to a second victim (Shawntez Booker). Specifically, the indictment charged petitioner with two counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A), with firearm specifications, for causing physical harm to Booker (Counts 1 and 2); one count of murder in violation of Ohio Rev. Code § 2903.02(A), with firearm specifications, for causing the death of Grafinreed (Count 3); and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(3). (Doc. 6, Ex. 1).

Prior to trial, petitioner's trial counsel filed a "Notice of Alibi" on petitioner's behalf. (*Id.*, Ex. 2). Petitioner also waived his right to a jury trial and elected to be tried by the court. (*Id.*, Ex. 3). On March 10, 2008, following a five-day bench trial, the court found petitioner guilty as charged. (*Id.,* Ex. 4; *see also* Ex. 5, p. 1).

After a sentencing hearing held on April 4, 2008, the trial court issued a Judgment Entry on April 8, 2008, sentencing petitioner to an aggregate prison term of twenty-five (25) years to life and ordering petitioner "to make restitution."[1] (*Id.*, Ex. 6). On May 13, 2009, the trial court issued a "Nunc Pro Tunc" Judgment Entry removing any reference to restitution. (*Id.*, Ex. 11).[2]

**Trial Court Proceedings: State Post-Conviction Petition**

On December 10, 2008, while petitioner was pursuing his initial appeal to the Ohio Court of Appeals, First Appellate District, that was ultimately *sua sponte* dismissed for lack of final appealable order, *see supra* n.2, new counsel filed a petition for post-conviction relief on petitioner's behalf with the trial court. (*Id.*, Ex. 19). In the petition, petitioner claimed that his trial attorney provided ineffective assistance by "failing to confer with his client about **all available defenses** of fact before taking th[e] matter to trial;" by failing to "fully investigate th[e] case;" and by failing "to cooperate with [petitioner's] friends, family, loved ones and witnesses who were ready, willing and able to testify on [petitioner's] behalf." (*Id.*, p. 7)

---

[1]Petitioner was sentenced to the following prison terms: seven (7) years on each felonious assault count; three (3) years for the weapons offense; fifteen (15) years to life for the murder offense; and three (3) years on one of the firearm specifications attached to the murder charge, which was "to be served consecutively and prior to the sentence imposed [for] underlying offense." (*See* Doc. 6, Ex. 6). The court ordered the sentences imposed for the felonious assault and weapons offenses to run "concurrently with each other but consecutively to the sentence" imposed for the murder offense. (*See id.*).

[2]The correction to the sentencing order was made after the Ohio Court of Appeals, First Appellate District, issued an order on February 18, 2009, *sua sponte* dismissing petitioner's initial timely appeal from the trial court's April 8, 2008 Judgment Entry. (*See* Doc. 6, p. 5 & Exs. 7-10). The state appellate court concluded that the judgment entry "did not constitute a final order" that could be appealed at that time because the trial court had "imposed restitution as part of the sentence," but had "not determine[d] the amount of restitution." (*Id.*, Ex. 10).

(emphasis in original). Petitioner contended that Dominque Adkins, Grafinreed's girlfriend, should have been more persistently pursued as a possible defense witness given that, in a video viewed by petitioner's trial counsel, Adkins affirmed that she could identify "the shooter" and yet, when shown a photographic line-up containing petitioner's picture, she indicated that she could "not identify the shooter from the line up shown." (*See id.*, pp. 4-5). Petitioner also claimed that his counsel should have investigated another "unknown" female witness mentioned by the police in the video given counsel's belief that the witness would have provided exculpatory testimony to the extent that she too "looked at a line up and was unable to pick out [petitioner] as being involved." (*See id.*, p. 5). As evidentiary support for his claims, petitioner attached as exhibits to the petition the affidavits of his trial counsel and his girlfriend, Shawnta Watkins;[3] petitioner also later submitted his own affidavit as additional evidence supporting his motion. (*See id.*, attached affidavits & Ex. 20; *see also* Doc. 7, July 10, 2009 Hearing, Trial Tr. 965).

In response, the State filed a motion to dismiss the post-conviction petition. (*Id.*, Ex. 21). In support of its motion, the State attached as exhibits the affidavits of Richard Gibson, the Hamilton County assistant prosecutor who represented the State in the criminal trial proceedings, and John Horn, a Cincinnati police detective who investigated the shootings of Booker and Grafinreed and testified for the State at the bench trial. (*See id.*).

The trial court construed petitioner's post-conviction petition as a motion for new trial and held an evidentiary hearing on July 10, 2009. The following witnesses testified at the hearing: petitioner's trial counsel; Dominque Adkins; John Horn; Cincinnati police detective

---

[3]In her affidavit, Watkins stated that she was the mother of petitioner's second child, who was born in 2008. (Doc. 6, Ex. 19, attached affidavit).

Bill Hilbert; and Richard Gibson. (*See* Doc. 7, July 10, 2009 Hearing, Trial Tr. 916-1062). After the hearing, the parties submitted additional briefs in support of their positions. (Doc. 6, Exs. 22-23).

On August 14, 2009, the trial court denied petitioner's motion for new trial, stating the reasons for its ruling on the record in open court. (*See* Doc. 7, August 14, 2009 Hearing, Trial Tr. 1066-1074). The court also entered a written order the same date summarily denying petitioner's motion for new trial as "not well taken." (Doc. 6, Ex. 24).

To the extent that petitioner had also requested post-conviction relief, petitioner's counsel filed a motion to stay the filing of Findings of Facts and Conclusions of Law so that he could have "an opportunity to review the record and make written additions" to the findings and conclusions that had been proposed by the State. (*Id.*, Ex. 25). The stay was granted, but by that time, the judge who had presided over the bench trial and the post-conviction proceedings was appointed to the state appellate court bench. (*See id.*, Exs. 26-28, Ex. 29, p. 2). Thereafter, petitioner's counsel filed a motion to strike the prosecutor's findings of fact and conclusions of law, and submitted petitioner's "version" of findings and conclusions to be entered. (*Id.*, Exs. 27-28).

On October 26, 2009, a visiting judge overruled petitioner's requests to strike or amend the proposed findings of fact and conclusions of law that had been submitted by the prosecutor. (*Id.*, Exs. 29-30). After reviewing the record and finding that "the prosecutor's version [was] substantially supported by the record including the trial transcript, the motion transcript, and the arguments of counsel," the visiting judge adopted the State's proposed findings of fact and conclusions of law pertaining to petitioner's post-conviction petition. (*See id.*, Ex. 29, pp. 2-4).[4]

---

[4]In so ruling, the court pointed out that to the extent the trial court had also construed petitioner's post-conviction petition as a motion for new trial, the court was not required to issue findings of fact or conclusions of law on that matter. (*Id.*, p. 3).

4

Pursuant to its ruling, the court entered on the record the written "Findings Of Fact, Conclusions Of Law And Entry Denying Petition For Post-Conviction Relief" that had previously been submitted by the prosecutor. (*See id.*, Ex. 31).

### Ohio Court Of Appeals: Consolidated Appeal (Case Nos. C-090507 & C-090588)

Petitioner pursued appeals to the Ohio Court of Appeals, First Appellate District, from both the trial court's judgment of conviction and sentence and the trial court's denial of his petition for post-conviction relief.

Specifically, in August 2009, petitioner was granted leave to file a delayed appeal from the trial court's judgment of conviction and sentence. (*See* Doc. 6, Exs. 14-16). In that appeal, docketed as Case No. C-090507, petitioner was represented by yet another attorney for appeal purposes. In the brief filed by counsel, petitioner asserted four assignments of error:

> 1. The trial court erred to the prejudice of the defendant-appellant by removing spectators from the courtroom in violation of his constitutional right to a public trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Section 10, Article I of the Ohio Constitution.
>
> 2. The trial court erred to the prejudice of the appellant in that it convicted him based on insufficient evidence and that it convicted him against the manifest weight of the evidence.
>
> 3. Appellant was deprived of his right to effective assistance of counsel.
>
> 4. The trial court erred to the prejudice of the appellant in allowing the prosecutor to engage in numerous violations of the appellant's right to a fair trial, in contravention of the Fourteenth Amendment to the U.S. Constitution.

(*Id.*, Ex. 17).

In August 2009, petitioner also filed a timely appeal from the trial court's denial of his post-conviction petition. (*See id.*, Ex. 32). In that appeal, docketed as Case No. C-090588, petitioner was represented by the same attorney who had assisted him in the post-conviction proceedings before the trial court. In the appellate brief filed by counsel, petitioner presented the

5

following assignments of error:

> 1. The Defendant's position is that § 2953.21 *et*[] *seq.* of the *Ohio Revised Code*, holds that the prisoner . . . is entitled to post conviction relief if the court can find that there was such a denial or infringement of the rights of the prisoner . . ., as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution. It is defendant-appellant[']s position that Mr. Lawrence was denied a Jury Trial based on advice from Counsel, and said advice did not rise to the level of competent advice.
>
> 2. Mr. Lawrence is guaranteed pursuant to *Ohio Revised Code* § 2953.21 *et*[] *seq.* that once a hearing on a Post Conviction Relief request has been heard, the Trial Court must make Finding[s] of Facts & Conclusions of Law. In this instance the Trial Court left the Bench prior to the filing of written Finding[s] of Facts & Conclusions of Law and a sitting Visiting Judge accepted the Prosecutors' version of Finding[s] of Facts & Conclusions of Law over objections from defense.

(*Id.*, Ex. 34).

The two appeals were consolidated. (*See id.*, Ex. 34). On August 4, 2010, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed both trial court judgments. (*Id.*, Ex. 36).

### Delayed Appeal To The Ohio Supreme Court

Petitioner did not pursue a timely appeal to the Ohio Supreme Court. On November 3, 2010, nearly three months after the Ohio Court of Appeals issued its decision in the consolidated appeal affirming the trial court's judgments, petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal with the state's highest court. (Doc. 6, Exs. 37-38). In the memorandum submitted in support of his motion for leave to file a delayed appeal, petitioner generally contended that he was unable to file a timely appeal because his appellate counsel sent him an unsigned copy of the appellate court's decision, and he had to wait for the requisite "official stamped and signed copy of the Judgment Entry" to be sent to him from the courts before he could perfect an appeal to the Ohio Supreme Court. (*Id.*, Ex. 38, "Memorandum In Support Of Motion"). In addition, petitioner averred as cause for his delay in filing that he is

"not educated in the law and ha[d] very limited access to the [prison] law library." (*Id.*).

On December 15, 2010, the Ohio Supreme Court denied petitioner's motion for delayed appeal and dismissed the appeal without opinion. (*Id.*, Ex. 39).

## Federal Habeas Corpus

Petitioner filed the instant federal habeas corpus petition in October 2011. In the petition, he presents the following claims for relief:

> **Ground One:** Where the trial court removes spect[a]tors from the courtroom without considering the appropriate factors to balance the appellant's right to a public trial with the interference with the administration of justice and fails to make findings to support such removal the trial court violates the appellant's right to a public trial.
>
> **Ground Two:** The Ohio Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution require that every criminal conviction be supported by the appropriate amount and quality of evidence.
>
> **Ground Three:** Where a defendant does not have the benefit of the effective assistance of counsel, the trial must be overturned and a new trial ordered.
>
> **Ground Four:** Where the State withholds documents and items from defense counsel, such conduct amounts to prosecutorial misconduct depriving appellant of his right to a fair trial.
>
> **Ground Five:** The Defendant's position is that § 2953.21 et seq. of the Ohio Revised Code holds that the prisoner . . . is entitled to post conviction relief if the court can find that there was such a denial or infringement of the rights of the prisoner . . . as to render the judgment void or voidable under the Ohio Constitution or the United State[s] Constitution. It is defendant-appellant[']s position that Mr. Lawrence was denied a jury trial based on advice from counsel, and said advice did not rise to the level of competent advice.
>
> **Ground Six:** Mr. Lawrence is guaranteed pursuant to Ohio Revised Code § 2953.21 et seq. that once a hearing on a post conviction relief request has been heard, the trial court must make Finding[s] of Facts & Conclusions of Law. In this instance the trial court left the Bench prior to the filing of written Finding[s] of Facts & Conclusions of Law and a sitting Visiting Judge accepted the Prosecutor's version of Finding[s] of Facts & Conclusions of Law over objections from defense.

(*See* Doc. 1).

In the return of writ filed in response to the petition, respondent concedes that the petition does not pose any statute of limitations concerns. (Doc. 6, Brief, p. 13). However, respondent contends that petitioner has waived all of his claims for relief as a result of his procedural default in failing to file a timely appeal to the Ohio Supreme Court. (*Id.*, pp. 18-20). Respondent also alternatively contends that (1) petitioner waived the claim alleged in Ground One because he did not lodge a contemporaneous objection when the trial court ordered the removal of spectators from the courtroom; (2) the claims alleged in Grounds Five and Six challenging the state post-conviction proceedings do not constitute cognizable grounds for federal habeas relief; and (3) the claims alleged in Grounds Two through Five lack merit. (*Id.*, pp. 20-37).

## II. PETITIONER PROCEDURALLY DEFAULTED AND HAS WAIVED HIS CLAIMS FOR FEDERAL HABEAS CORPUS RELIEF

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v.*

*Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). In those cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797,

9

803-04 (1991). Moreover, in *Harris,* the Supreme Court explained that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The Court stated: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

The Sixth Circuit employs a three-prong test that was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually

> enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)), *cert. denied,* 131 S.Ct. 2117 (2011); *see also Johnson v. Bradshaw*, __ F. App'x __, No. 06-3141, 2012 WL 3241545, at *2 (6th Cir. Aug. 9, 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson, supra,* 2012 WL 3241545, at *3. *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner procedurally defaulted the claims he has raised in the instant petition by failing to perfect a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' August 4, 2010 Judgment Entry affirming the trial court's judgment of conviction and sentence and the denial of petitioner's state post-conviction petition. Petitioner defaulted the claims alleged in Grounds Five and Six challenging the disposition of his post-conviction petition because the Ohio Supreme Court's Rules of Practice do not permit delayed appeals to the state's highest court from appeals involving post-conviction relief. *See* Ohio S.Ct. Prac. R. 2.2(A)(4)(c). Moreover, although petitioner was permitted under Ohio S.Ct. Prac. R. 2.2(A)(4)(a) to seek a delayed appeal in order to challenge the Ohio Court of Appeals' decision affirming the trial court's judgment of conviction and sentence, petitioner procedurally defaulted the claims alleged in Grounds One through Four, which were or should have been raised in that

11

appeal, because the Ohio Supreme Court summarily denied petitioner's request for leave to file a delayed appeal. (*See* Doc. 6, Ex. 39).

The Sixth Circuit has held that the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *see generally Harris,* 489 U.S. at 260-62. In so holding, the Sixth Circuit reasoned that "the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla,* 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein). The court explained:

> The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id*. A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id*. Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4)(c). Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.

*Id.* at 497.

As in *Bonilla*, petitioner failed to file a timely notice of appeal with the Ohio Supreme Court and his motion for leave to file a delayed appeal was denied by that court apparently because he did not provide adequate reasons for his delay in filing. *See id.* In this case, as in *Bonilla,* the Ohio Supreme Court was "entirely silent as to its reasons for denying [the] requested relief." *Id.* In such circumstances, it must be assumed that the state supreme court enforced the applicable procedural bar to review. *Id.* (citing *Sparkman,* 94 F.3d at 203).

Because petitioner failed to comply with a state procedural rule, which was relied on by the Ohio Supreme Court in denying his motion for delayed appeal, the Ohio Supreme Court was

12

not provided with an opportunity to consider the merits of any of his claims for relief. Therefore, this Court's review of petitioner's claims is barred unless petitioner "can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 497 (quoting *Coleman,* 501 U.S. at 750).

Petitioner has not established cause for his procedural default in this case. In his motion for delayed appeal to the Ohio Supreme Court, petitioner generally contended that he was unable to perfect a timely appeal because he is a *pro se* litigant who lacks knowledge of the law and had only limited access to the prison law library. However, in *Bonilla,* the Sixth Circuit rejected similar arguments, holding that the petitioner's *pro se* status, limited access to the prison law library, and ignorance of the law and procedural requirements for filing a timely appeal were insufficient to establish cause. *Id.* at 498; *see also Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir. 1995). Similarly, petitioner's conclusory assertions regarding his lack of legal knowledge and limited access to the prison law library are inadequate to constitute cause for his procedural default in this case. *Cf. Rogers v. Warden, Warren Corr. Inst.,* No. 1:10cv397, 2011 WL 1771691, at *6 (S.D. Ohio Feb. 8, 2011) (Litkovitz, M.J.), *adopted,* 2011 WL 1753711 (S.D. Ohio May 9, 2011) (Dlott, J.).

Petitioner also claimed in his motion for delayed appeal to the Ohio Supreme Court that he was prevented from filing a timely appeal because he did not obtain an "official stamped and signed copy of the Judgment Entry" being appealed until after the 45-day appeal period had expired. Ohio S.Ct. Prac. R. 3.1(D)(1) mandates that a "date-stamped" copy, or copy "bearing the file stamp of the clerk of the court of appeals and reflecting the date the court of appeals filed its judgment entry for journalization," must be attached to a memorandum in support of jurisdiction. Under Rule 2.2(A)(1)(a), the memorandum in support of jurisdiction must be filed

at the time the notice of appeal is filed.

However, petitioner has not alleged any facts or provided any evidence to substantiate his general contention that the delay in providing a signed and stamped copy of the appellate court's decision amounts to cause for his procedural default in the state courts. For example, petitioner has not stated when he first obtained a date-stamped copy of the decision required for filing a timely appeal with the Ohio Supreme Court. He also has not provided any information regarding actions he may have taken to secure the requisite document after learning of the Ohio Court of Appeals' decision or, if necessary, to extend the appeal period pending receipt of a date-stamped copy of that decision. On the other hand, respondent has submitted evidence showing that petitioner received correspondence on August 13, 2010, within ten days after the Ohio Court of Appeals issued its Judgment Entry affirming the trial court's judgments, from the attorney who represented him in the state trial and appeal proceedings on his petition for post-conviction relief. (*See* Doc. 6, Ex. 46). Even assuming as petitioner has argued that his counsel failed to provide him with an official copy of the appellate court's decision at that time, petitioner still had over a month remaining in the appeal period due to expire September 18, 2010 to secure a date-stamped copy of the decision for the purpose of filing a timely appeal. In the absence of any evidence or explanation by petitioner to justify why he was unable in the exercise of due diligence to obtain a date-stamped copy of the appellate court's decision within the 45-day time frame, petitioner has not demonstrated cause sufficient to excuse the procedural bar to review.

Even assuming for the sake of argument that petitioner could not in the exercise of due diligence obtain a date-stamped copy of the state appellate court's decision within the time allotted for initiating a timely appeal to the Ohio Supreme Court, it further appears from the record that petitioner did not file any motion in the state courts requesting an extension of the

appeal period pending his receipt of the requisite document. (*See id.*, Exs. 43-45). Moreover, petitioner has not provided any explanation for his significant delay in filing a motion for leave to file a delayed appeal with the Ohio Supreme Court after finally securing that document. The "date-stamped" copy of the appellate court decision that was appended to petitioner's delayed appeal motion contains an attestation dated "9/28/10" by the Hamilton County Clerk of Courts that the document was a "true copy of the original." (*See id.*, Ex. 38). It thus appears from the record that by the end of September 2010, petitioner had received the "official stamped and signed copy of the Judgment Entry" being appealed. However, petitioner did not file his motion for delayed appeal with the Ohio Supreme Court until November 3, 2010. In the absence of any evidence or explanation as to why petitioner was prevented from filing his motion for delayed appeal immediately after obtaining the date-stamped copy of the appellate court decision, the undersigned remains unpersuaded by petitioner's conclusory argument that his lack of access to a date-stamped copy of the Ohio Court of Appeals' decision constitutes cause for his procedural default in this case.

Finally, petitioner has not argued, nor does the record demonstrate, that failure to consider any of his defaulted claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498. Although petitioner challenges the weight and sufficiency of evidence supporting his convictions in Ground Two of the petition, actual innocence means factual innocence, not mere legal insufficiency. *See House v. Bell,* 547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff*, 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011).

To establish a credible claim of actual innocence sufficient to overcome a procedural bar to review, the petitioner must "establish in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *House,* 547 U.S. at 536-37 (quoting *Schlup*, 513 U.S. at 327); *cf. Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005); *McSwain v. Davis,* 287 F. App'x 450, 458 (6th Cir. 2008). The standard is "demanding and permits review only in the 'extraordinary' case." *House,* 547 U.S. at 538 (quoting *Schlup,* 513 U.S. at 327). To be credible, a claim of actual innocence must be based on "new reliable evidence . . . that was not presented at trial." *House,* 547 U.S. at 537 (quoting *Schlup*, 513 U.S. at 324); *see also Calderon v. Thompson,* 523 U.S. 538, 559 (1998). *Cf. Perkins v. McQuiggin*, 670 F.3d 665, 671 (6th Cir. 2012) ("claims of actual innocence must be based on new reliable evidence") (internal citation and quotation omitted), *petition for cert. filed*, 81 U.S.L.W. 3074 (U.S. July 25, 2012) (No. 12-126).

In this case, petitioner presented evidence in the state post-conviction proceedings suggesting that there were two potential eyewitnesses to the shooting, who would not have identified him as the shooter if they had testified at his trial. One of the potential defense witnesses, Dominque Adkins, testified at the post-conviction evidentiary hearing. After hearing the testimony of all the witnesses including Adkins, the trial judge, who also presided over the original bench trial and was thus "very familiar with what occurred in th[e] case and how the [events] transpired," found that Adkins' testimony did not exonerate petitioner because Adkins had not seen the shooter and her testimony was based solely "upon an incident that happened ten days to two weeks" earlier. (*See* Doc. 7, August 14, 2009 Hearing, Trial Tr. 1067-68; *see also* Doc. 6, Ex. 31). The trial judge also found that the other potential defense witness, who was identified at the hearing as Sherrie Johnson, "didn't see anything that would have given any help to this case on either side." (Doc. 7, August 14, 2009 Hearing, Trial Tr. 1070). The judge

explained that Johnson was not a witness to the shooting and only indicated to the police that she "saw someone in green sometime around the shooting" whom "she could not say . . . was the defendant." (*Id.*; *see also* Doc. 6, Ex. 31). The trial judge, who had originally tried and convicted petitioner, remained unpersuaded by petitioner's "new evidence" that a new trial was warranted or that post-conviction relief should be granted. The judge's findings are supported by the record. (*See* Doc. 7, July 10, 2009 Hearing, Trial Tr. 967-69, 976, 979-80, 1010-15, 1026-28). Therefore, to the extent it may be argued that Adkins' and Johnson's testimony constitutes "new evidence," petitioner has not demonstrated a credible claim of actual innocence based on such evidence, or in other words, that it is more likely than not that the trial judge, who also presided over the evidentiary hearing, would not have found him guilty beyond a reasonable doubt.

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted his claims for relief by failing to file a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' decision affirming the trial court's judgment of conviction and sentence and the denial of post-conviction relief. Because petitioner has not demonstrated cause for his procedural default or that a fundamental miscarriage of justice will occur if his claims are not considered by this Court, petitioner has waived all grounds for federal habeas relief that are asserted in the instant petition. The petition, which is thus barred from review by this Court, is subject to dismissal with prejudice.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review,

17

because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[5]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: <u>September 5, 2012</u>             <u>s/ J. Gregory Wehrman</u>
    cbc                                               J. Gregory Wehrman
                                                            United States Magistrate Judge

---

[5]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of the defaulted grounds for relief. *See Slack,* 529 U.S. at 484.

18

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KEVIN LAWRENCE,  
    Petitioner

Case No. 1:11-cv-765

vs

Dlott, J.  
Wehrman, M.J.

WARDEN, LEBANON  
CORRECTIONAL INSTITUTION,  
    Respondent

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).